**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                    :
TAMEEK T. AVERY,                    :
                                    :  Civil Action No. 04-1481(DMC)
            Petitioner,             :
                                    :
       v.                           :        **O P I N I O N**
                                    :
ROY L. HENDRICKS, et al.,           :
                                    :
            Respondents.            :
_____:

**APPEARANCES:**

Tameek T. Avery, <u>Pro</u> <u>Se</u>
#290800/810424B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Gary A. Thomas
Special Deputy Attorney
Acting Assistant Prosecutor
Essex County Prosecutor's Office
Essex County Courts Building
Newark, NJ 07102
Attorney for Respondent

**CAVANAUGH**, District Judge

    Petitioner, Tameek T. Avery, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Respondent has filed an Answer.  The Court has considered all submissions.  For the reasons set forth below, the Petition will be DISMISSED WITHOUT PREJUDICE.

**BACKGROUND**

1. <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> On February 27, 1996, Marques Robinson saw a man riding around his neighborhood in Newark on a bicycle at approximately 3:30 p.m.  Later that day, at approximately 5:00 p.m., Marques Robinson and his brother, Charles Robinson, were walking along Bergen Street in Newark when they observed the same man riding slowly on the bicycle apparently with no ultimate destination or set direction.
>
> The Robinsons continued to walk down the street Watched as defendant tried to take something out of the back of his pants and put it in front.  As they proceeded down the street, defendant emerged from behind a wall and cut them off.  Defendant then pulled out a gun pointed it at the Robinsons, and told them to empty their pockets.
>
> The Robinsons testified that they were approximately fine feet away from the defendant when he attempted to rob them.  Marques Robinson had fifty cents in his pocket, while Charles Robinson had no money at all.  Defendant then rode away from the Robinsons on his bicycle without taking anything from them.
>
> Shortly thereafter, 21-year-old Oluwagbenga Falana was walking down Bergen Street carrying a book bag and a McDonalds uniform on his way to work.  The defendant rode up to him on his bicycle, pointed a gun at Falana, and demanded his money.  As Falana handed his wallet to defendant, defendant shot Falana three times from a range of approximately eighteen inches to two feet away.  Defendant then rode away on his bicycle as Falana yelled for help to Kelly McKenith, who watched the crimes from the second-floor window of a nearby apartment building.
>
> Immediately before the robbery of Falana, Louis Goosby saw the defendant riding his bicycle in the area.

Goosby had known the defendant for three years.  Shortly after seeing the defendant on his bicycle, he heard a gunshot.  Goosby went to investigate the noise, at which point he saw the defendant standing by the bicycle pointing a gun at Falana.  Goosby watched as the defendant fired two more shots at Falana and then rode away on his bicycle.  Subsequently, the police and ambulance arrived to take Falana to University Hospital.  He was pronounced dead at 6:35 p.m.

Later that same evening, Goosby was approached by the defendant, who asked him if he had seen the shooting.  After Goosby replied that he had, defendant asked if the victim was still breathing after the shooting.

At trial, Goosby's mother, Robin Goosby, who was dating defendant's best friend, Phil McPherson, testified that on the afternoon of the robberies she observed defendant riding his bicycle away from her house with a gun tucked into the back of his pants.  Around 7:00 p.m. the same day, she overheard defendant telling McPherson, "he went to reach for it and it went: Bang, bang, bang."

Investigator Howard Johnson of the Essex County Prosecutor's Office testified that on February 29, 1996, he prepared a photographic array containing photographs of possible suspects and showed it to Charles and Marques Robinson.  Charles could not identify the perpetrator, but Marques said one person in the array was similar looking to the man who robbed them.

After Investigator Johnson received information about defendant from Robin and Louis Goosby, he prepared another photographic array containing a photograph of defendant and showed it to the Robinsons.  Both Robinson brothers positively identified the defendant as the person who had robbed them.  Louis Goosby also identified the defendant as the person he saw shoot Falana.

Investigator Johnson stated defendant was arrested at 4:45 a.m. on March 21, 1996.  Four hours later, defendant was advised of his rights and was interrogated, leading to a sworn written statement which included a confession to the robbery and the murder.  In the statement provided, defendant admitted he had robbed the Robinsons and that he had shot Falana by accident when he reached for the gun.

3

    Lieutenant Gary Prystack, a ballistics expert from the Newark Police Department, testified that the murder weapon fired three .22 caliber hollow point bullets. Prystack also testified the three shots could not have been fired by accident because each shot took twelve pounds of pressure.

    At trial, defendant confessed to robbing Charles and Marques Robinson at gunpoint. However, he testified he did not shoot the decedent but had confessed to the shooting in the sworn statement only to cover up for his friend, Phil McPherson, who he alleged was Falana's actual murderer. Defendant stated that upon his arrest on March 21, 1996, the police told him he could get life in prison or the death penalty. However, he claimed they also told him he would be out of jail in 36 months if he confessed. The jury found the defendant guilty . . .

    Ms. Lim returned to her home and with her nephew proceeded to the McDonald's on Journal Square where they were unable to observe the van. After consulting with her husband, Ms. Lim contacted the Jersey City Police. On two occasions, one shortly after the incident, and the second, a week after the incident, Ms. Lim was unable to identify defendant from photographs produced by the police. She was, however, able to identify defendant's voice on a tape recording played for her.

    At approximately 9:50 p.m. on the day of the carjacking, Trooper Wes Starling, a North Carolina State Trooper was on traffic patrol monitoring traffic proceeding south on Interstate 95 in North Carolina when he observed a blue Toyota van proceeding at eighty-one miles per hour. After the vehicle was stopped, Trooper Starling questioned defendant, the driver, who indicated that he did not have a license nor a registration as the van belonged to his sister. A radio check revealed that the van had been stolen from Jersey City. Defendant then told the trooper that the van had been purchased from a "Jerry" that morning at McDonald's in Jersey City. In the van, the trooper observed approximately six to eight .38 caliber bullets. No handgun was found. Defendant was placed under arrest and, ultimately, returned to New Jersey to respond to these charges.

(State v. Avery, A-6053-96T4 (June 11, 1998), pp. 3-6).

2.  <u>Procedural History</u>

Following a jury trial, Petitioner was convicted of first degree aggravated manslaughter, contrary to <u>N.J.S.A.</u> 2C:11-3a(1), first-degree armed felony murder, contrary to <u>N.J.S.A.</u> 2C:11-3a(3), first-degree robbery, contrary to <u>N.J.S.A.</u> 2C:15-1, third-degree unlawful possession of a weapon, contrary to <u>N.J.S.A.</u> 2C:39-5b, and second-degree possession of a weapon for unlawful purpose, contrary to <u>N.J.S.A.</u> 2C:39-4a.

On May 2, 1997, Petitioner was sentenced to a term of life with 30 years of parole ineligibility.  Petitioner was also sentenced to two 20-year terms of imprisonment with 10-year parole ineligibilities, which were to run concurrent with each other but consecutive to the original life sentence with 30 years of parole ineligibility.

Petitioner thereafter filed an appeal, and on June 11, 1998, Petitioner's conviction and sentence were affirmed by the Superior Court of New Jersey, Appellate Division.  On June 22, 1998, Petitioner filed a motion for certification with the New Jersey Supreme Court, which was denied on September 24, 1998.

Petitioner next filed a petition for Post-Conviction Relief ("PCR"), and on December 11, 2000, said petition was denied by the Superior Court of New Jersey, Law Division.  Petitioner appealed and on October 17, 2002, his appeal was denied.  On December 11, 2003, Petitioner's motion for certification to the New Jersey Supreme Court was denied.  On March 30, 2004,

Petitioner filed the instant Habeas Corpus Petition pursuant to 28 U.S.C. § 2254.

## DISCUSSION

**Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

> Ground One - The Court Erred in Denying Defendant's Motion to Sever Counts Six and Seven from Trial.
>
> Ground Two - The Out-of-Court Identifications of Defendant by Charles and Marques Robinson and Louis Goosby were Impermissibly Suggestive and Tainted their In-Court Identification of Petitioner.
>
> Ground Three - The Court Erred in Admitting Petitioner's Confession as "Unfair Means" were Utilized to Obtain Said Statement.
>
> Ground Four - The Prosecutor's Summation Deprived Defendant of a Fair Trial.
>
> Ground Five - The Lack of a Proper Identification Charge in this Case Amounted to a Fundamental Denial of Justice.
>
> Ground Six - The Court Erred by Instructing the Jury that Attempt was not a Part of the Case and Was not to be Considered.
>
> Ground Seven - The Court Erred by Providing the Jury with an Erroneous Felony-Murder Charge.

See Petition for Writ of Habeas Corpus.

**Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held

that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.  A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

   With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal

8

v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

9

(1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**Unexhausted Claims.**

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."[1]  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

---

[1] Exhaustion of state remedies has been required for more than a century, since the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886).  The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and was the subject of significant revisions in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996).

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18.  Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review.  Rose, 455 U.S. at 519.

A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  *Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.* Picard v. Connor, 404 U.S. 270, 275 (1971); Castille v. Peoples, 489 U.S. 346, 350 (1989)(emphasis added).

11

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual predicate must also be the same. Id. at 277.

Where any available procedure remains for the applicant to raise the question presented in the courts of the state, the applicant has not exhausted the available remedies. 28 U.S.C. § 2254(c). The Supreme Court has made clear that a § 2254 petition which includes unexhausted as well as exhausted claims, *i.e.*, a "mixed petition", must be dismissed without prejudice. In other words, if any of the claims asserted in the habeas petition are unexhausted, the entire petition must be dismissed. See Rose, 455 U.S. at 510 (this is referred to as the "total exhaustion" rule). However, in Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the Third Circuit has held that, while district courts have the discretion to stay "mixed petitions", when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action. 360 F.3d at 152.

In the present case, the petition, on its face, shows that Petitioner has failed to exhaust his state court remedies with respect to his 1997 state court conviction before seeking federal habeas relief. Specifically, Grounds One through Four of

Petitioner's habeas motion, although raised and denied on direct appeal, Petitioner failed to raise those issues to the New Jersey Supreme Court. Because Grounds One through Four were not presented for full state court review, the Court is constrained to dismiss the entire petition, without prejudice, for failure to exhaust as required under 28 U.S.C. § 2254. See Rose, 455 U.S. at 510. In addition, there is no indication from the petition that Petitioner's non-exhaustion of state court remedies should be excused. Petitioner has not shown that there is an absence of available state process with respect to his unexhausted claims. Before exhaustion will be excused on this basis, "state law must clearly foreclose state court review of unexhausted claims." Toulson, 987 F.2d at 987.

Thus, as a matter of comity, it is best left to the New Jersey courts to determine if they can still entertain Petitioner's unexhausted claims. District courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust

13

state remedies"). Here, no state court has concluded that Petitioner is procedurally barred from raising his unexhausted claims. Therefore, because New Jersey law does not clearly require a finding of default, this Court is not prepared to presume that Petitioner's Grounds One through Four would necessarily be barred from New Jersey Supreme Court review.

Alternatively, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused." Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987). However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Id. at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187.

Here, Petitioner alleges no facts suggesting that state procedures are in effect unavailable to him. Therefore, the Petition will be dismissed for failure to exhaust state court

14

remedies.

**Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 1537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find the Court's procedural disposition of this case debatable. Accordingly, no certificate of appealability will issue.

15

## Conclusion

For the foregoing reasons, this Court finds that Petitioner has failed to exhaust his available state court remedies or to allege facts sufficient to excuse failure to exhaust. The Court therefore will dismiss without prejudice the § 2254 habeas petition for failure to exhaust available state court remedies.

No certificate of appealability will issue, insofar as Petitioner has failed to make a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

 S/ Dennis M. Cavanaugh
HONORABLE DENNIS M. CAVANAUGH
United States District Judge

DATED: 5/23/06